Leda Dunn Wettre
Keith J. Miller
ROBINSON WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: (973) 690-5400
lwettre@rwmlegal.com
kmiller@rwmlegal.com

John P. Margiotta (*pro hac vice* application pending)
Laura Popp-Rosenberg (*pro hac vice* application pending)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
jmargiotta@frosszelnick.com
lpopp-rosenberg@frosszelnick.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------------x

CARTIER INTERNATIONAL AG; CARTIER, a
division of RICHEMONT NORTH AMERICA,
INC.; and VAN CLEEF & ARPELS, S.A.,

              Plaintiffs,

              v.

DANIEL MARKUS, INC., D & M JEWELRY CORP.,
D & M JEWELRY INC. (all of the foregoing d/b/a
DANIEL MARKUS JEWELERS); DANIEL RISIS,
MARGARITA RISIS; MARK RISIS; ALEXANDER
SKALRUD; and VARIOUS JOHN and JANE DOES
and XYZ COMPANIES (not yet known),

              Defendants.

-------------------------------------------------------------------x

FILED UNDER SEAL PURSUANT
TO 15 U.S.C. § 1116

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, for their Complaint against Defendants, allege as follows:

## SUBSTANCE OF THE ACTION

1.     All of the claims asserted herein arise out of and are based on Defendants'

unlawful promotion, distribution and sale of very expensive counterfeit jewelry products that use

imitations of Plaintiffs' famous CARTIER and VAN CLEEF & ARPELS trademarks, along with

numerous other trademarks owned by these world-famous companies.  Plaintiffs bring claims for

federal trademark infringement under Section 32(1) of the United States Trademark Act of 1946,

as amended (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition and false advertising

under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution and tarnishment of

Plaintiffs' trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of

New Jersey's state trademark dilution statute, N.J.S.A. § 56:3-13.20; statutory unfair competition

under New Jersey law, N.J.S.A. § 56:4-1 *et seq.*; and related claims of common law unfair

competition under New Jersey law.

2.     Plaintiffs seek an order pursuant to Section 34(d) of the Lanham Act, 15 U.S.C. §

1116(d), authorizing an *ex parte* seizure of the counterfeit and infringing goods and immediate

access to Defendants' business records identifying Defendants' source for its products and

Defendants' customers.  In addition, Plaintiffs seek an *ex parte* temporary restraining order and

preliminary and permanent injunctive relief to prevent the sale, shipment and further

dissemination of the infringing goods, as well as an accounting of profits, and treble damages or

statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold or distributed

as authorized by Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), as well as recovery of its

attorneys' fees and other relief authorized by the Lanham Act and applicable state law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. §
1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331,
1338(a) & (b), and under principles of pendent jurisdiction.   Supplemental jurisdiction exists
over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.   Venue is proper under Section
1391(b) of the Judicial Code, 28 U.S.C. §§ 1391(b), because a substantial part of the events
giving rise to the claims occurred in this district and Defendants reside and may be found here.

## THE PARTIES

4.      Plaintiff Cartier International AG is a public limited company organized and
existing under the laws of Switzerland, having its principal place of business at Hinterbergstrasse
22, 6330 Cham, Switzerland.

5.      Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation
organized and existing under the laws of the State of Delaware, having its executive offices and
principal place of business at 653 Fifth Avenue, New York, New York 10022-5910.   Cartier, a
division of Richemont North America, Inc., is the exclusive distributor and licensee of Cartier
brand products in the United States.   Herein, Plaintiff Cartier International AG and Plaintiff
Cartier, a Division of Richemont North America, Inc., are referred to together as "Cartier."

6.      Plaintiff Van Cleef & Arpels S.A. ("Van Cleef & Arpels") is a corporation
organized and existing under the laws of Switzerland, having a principal place of business at 8
Rue des Biches, 1752 Villars-sur-Glane, Switzerland.

7.      Upon information and belief, each of Defendants Daniel Markus, Inc.; D & M
Jewelry Corp.; and D & M Jewelry Inc., all doing business as Daniel Markus Jewelers,
(collectively, "Daniel Markus Jewelers") is a New Jersey corporation with a principal place of

business at 221 Washington Street, Newark, New Jersey 07102.  Upon information and belief, Daniel Markus Jewelers also has retail store locations at 417 Broad Street, Bloomfield, New Jersey 07003 and at 402 Springfield Avenue, Summit, New Jersey 07901.

8.     Upon information and belief, Defendant Daniel Risis is an individual residing in the State of New Jersey.   On further information and belief, Daniel Risis is an owner of Defendant Daniel Markus Jewelers and is actively and consciously directing Daniel Markus Jewelers' wrongful actions described herein, and, as such, is personally responsible and individually liable for such conduct.

9.     Upon information and belief, Defendant Margarita Risis (also known as Margaret Risis) is an individual residing in the State of New Jersey.  On further information and belief, Ms. Risis is President of Defendant Daniel Markus Jewelers and is actively and consciously directing Daniel Markus Jewelers' wrongful actions described herein, and, as such, is personally responsible and individually liable for such conduct.

10.     Upon information and belief, Defendant Alexander Skalrud is an individual residing in the State of New Jersey.  On further information and belief, Mr. Skalrud is Vice-President of Defendant Daniel Markus Jewelers and is actively and consciously directing Daniel Markus Jewelers' wrongful actions described herein, and, as such, is personally responsible and individually liable for such conduct.

11.     Upon information and belief, Defendant Mark Risis is an individual residing in the State of New York at 246 Carlton Avenue, Apt. 1, Brooklyn, NY 11205.  On further information and belief, Mark Risis is the registered owner of the domain name dmjewel.com, through which Defendant Daniel Markus Jewelers perpetrates some of its counterfeiting

activities, is actively and consciously directing Daniel Markus Jewelers' wrongful actions described herein, and, as such, is personally responsible and individually liable for such conduct.

12.     Upon information and belief, Defendants John Does and Jane Does (who are not yet known), are present and/or doing business in New Jersey and are engaged in tortious conduct that is causing harm to Plaintiffs within this judicial district.   These John and Jane Does are, therefore, subject to the jurisdiction of this Court.   Plaintiffs will amend their Complaint to identify these individuals when the name or names of these individuals become known.

13.     Upon information and belief, Defendants XYZ Companies (which are not yet known) through their agents, servants, and employees are present and/or doing business in New Jersey and are engaged in tortious conduct that is causing harm to Plaintiffs within this judicial district.   These XYZ Companies are, therefore, subject to the jurisdiction of this Court.   Plaintiffs will amend their Complaint to identify these companies when the name or names of these companies become known.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.     THE CARTIER BUSINESS AND THE CARTIER MARKS

14.     Cartier is a world-famous supplier of fine jewelry and luxury watches sold under the CARTIER name and mark.

15.     Founded in 1847 by Louis-François Cartier, Cartier has built a reputation for fine craftsmanship in the jewelry field.   Through over 160 years of use, Cartier has built its CARTIER name and mark to be synonymous with high-quality, well-crafted jewelry.   Today, the company offers for sale and sells a wide range of products including timepieces, fine jewelry, and accessories.   Cartier's commitment to innovation in design and function, as well as the use of only the finest materials, has brought it renown as a leading maker of luxury goods.

16.     Among the trademarks owned and used by Cartier is the world-famous CARTIER trademark, which has been used continuously in the United States in connection with the advertising and sale of fine jewelry and watches since at least as early as 1909. The CARTIER trademark is the subject of U.S. Trademark Registration No. 411,239, registered on January 9, 1945, for, *inter alia*, various items of jewelry; U.S. Trademark Registration No. 759,201, registered on October 29, 1963, for watches and clocks; and U.S. Trademark Registration No. 759,202, registered on October 29, 1963, for jewelry.[1] Printouts of the registration information concerning the above marks are attached hereto as Exhibit A. These registrations are valid, subsisting and in full force and effect, and have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore serve as conclusive evidence of the validity of the CARTIER mark, of the registration of the mark, and of Cartier's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

17.     In addition to its registrations for the CARTIER mark, Cartier owns numerous federal registrations for other marks that it uses in connection with its sale of jewelry and watches. The registrations relevant to this action, which cover jewelry and/or watches among other goods and services, are as follows:

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|--------|-----------|-------------|--------------------|
| BALLON BLEU | 3476888 | July 29, 2008 | Goods in precious metals and coated therewith, namely, cuff-links, tie clips, rings being jewelry, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |

---

[1] The U.S. registrations identified in paragraphs 16 and 17 currently list the owner as Cartier International N.V. Effective December 16, 2009, Cartier International N.V. relocated to Switzerland and changed its corporate name to Cartier International AG Cartier is in the process of updating the public records to reflect this change of name.

| Mark | Reg. No. | Reg. Date | Registered Goods |
|---|---|---|---|
| Ↄ | 1535215* | April 18, 1989 | Bracelets, rings, earrings |
| *Cartier* | 0411975* | February 13, 1945 | Watches and clocks and wrist watches with wrist straps and bracelets attached for securing the same on the wrist of the wearer, and traveling clocks and watches with covers of leather, fabric and the like for protecting them while traveling |
| *(logo)* | 2703544* | April 8, 2003 | Chronometers and watches |
| **La Doña** | 3462423 | July 8, 2008 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes made of precious metals for watches and jewellery |
| LANIERES | 2566458* | May 7, 2002 | Ashtrays, boxes and cases for watches, jewellery and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts sold empty, and serving trays, all these made of precious metals or coated therewith; jewellery, precious gem stones; chronometers, clocks and watches |
| LOVE | 3637776 | June 16, 2009 | Goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry |
| MUST DE CARTIER | 1291984* | August 28, 1984 | Watches, clocks, jewelry, lighters made in whole or in part of precious metal |
| PASHA | 1483326* | April 5, 1988 | Watches |
| PASHA SEATIMER | 3318649 | October 23, 2007 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery |

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| ROTONDE | 3496125 | September 2, 2008 | Horological and chronometric instruments; jewellery of precious metal and precious stones; precious stones; articles in precious metals and their alloys, namely, cuff-links, tie clips, and watch chains, all sold through high-end luxury retail outlets |
| SANTOS | 1344284* | June 25, 1985 | Watches |
| TANK | 1006321 | March 11, 1975 | Watches |
| TANK | 3006779* | October 18, 2005 | Jewellery, such as bracelets, brooches, charms, cuff-links, earrings, necklaces, rings |
| TORTUE | 1948372* | January 16, 1996 | Watches |
| TRINITY | 1927987* | October 17, 1995 | Jewelry made of precious metal or coated therewith |
| TRINITY | 2243233* | May 4, 1999 | Watches |
|  | 1372423* | November 26, 1985 | Bracelets |
|  | 3162410 | October 24, 2006 | Jewelry, namely, bracelets, watches, rings, charms, earrings, dog tag type pendants; cuff links; belt buckles made of precious metal |
|  | 3282847 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3282846 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
|  | 3282738 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3282739 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3211038 | February 20, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3211039 | February 20, 2007 | Horologic and chronometric instruments, namely, watches |

Printouts detailing the registration information for the above marks are attached hereto as Exhibit B. These registrations are all valid, subsisting and in full force and effect. The registrations identified above with an asterisk have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Cartier's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of

the Lanham Act, 15 U.S.C. § 1115(b).  Collectively, the marks shown in Exhibits A and B are herein referred to as the "CARTIER Marks."

18.     Cartier has extensively advertised and promoted the products manufactured, sold and offered for sale under the CARTIER Marks.  The CARTIER Marks immediately indicate Cartier as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

19.     Cartier's products sold under the CARTIER Marks are available throughout the United States, both through Cartier's own boutiques and in additional authorized retail stores. Cartier sells millions of dollars of products under the CARTIER Marks each year.

20.     The products distributed by Cartier under the CARTIER Marks are of the highest quality and are subject to exacting quality control standards.  Cartier takes pains to ensure the quality of its products by monitoring their production and distribution.  As a result of these efforts, Cartier has developed a reputation for providing the highest-quality products under the CARTIER Marks and consumers have come to expect that products bearing the CARTIER Marks are of the highest quality and workmanship.

21.     Cartier also has expended large sums of money in advertising and promoting to the trade and to the public the CARTIER Marks and the products sold under those marks.

22.     Through Cartier's significant investment of time, money and effort, widespread sales, and the high quality of Cartier products sold under or in connection with its CARTIER Marks, the CARTIER Marks and trade name have acquired enormous value and have become extremely well-known to the consuming public and trade as identifying and distinguishing the source of Cartier's products exclusively and uniquely.  As a result of the great public acceptance

of Cartier's products, the CARTIER Marks have come to represent enormous goodwill and are famous throughout the United States.

B.     THE VAN CLEEF & ARPELS BUSINESS AND TRADEMARKS

23.     Van Cleef & Arpels is a world famous supplier of fine jewelry and luxury watches sold under the VAN CLEEF & ARPELS brand name.

24.     Established in France in 1896, Van Cleef & Arpels and its predecessors-in-interest and associated companies have been doing business under the VAN CLEEF & ARPELS name and mark for more than 100 years and in the United States since at least as early as 1939. Since its inception, Van Cleef & Arpels has been known for its innovative, high-quality fine jewelry and luxury watches.  Van Cleef & Arpels's products appeal to the luxury goods market and have become extraordinarily fashionable.

25.     Among the trademarks owned and used by Van Cleef & Arpels is the famous VAN CLEEF & ARPELS mark.  The VAN CLEEF & ARPELS (Stylized) mark is the subject of U.S. Trademark Registration No. 1,415,794, registered on November 4, 1986, for jewelry and watches, and U.S. Trademark Registration No. 2,936,247, registered on March 29, 2005, for jewelry and watches, among other goods.  Printouts of the registration information concerning the above marks are attached hereto as Exhibit C.  These registrations are valid, subsisting and in full force and effect.  In addition, Registration No. 1,415,794 has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Van Cleef & Arpels's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

26.     In addition to the famous VAN CLEEF & ARPELS mark, Van Cleef & Arpels

owns and has registered, among others, the following marks:

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| ALHAMBRA | 2751878 | August 19, 2003 | Precious metal and their alloys and products made thereof or coated therewith not included in other classes, namely, jewelry, horological and chonometric instruments, namely, watches and watch bracelets, necklaces, jewelry chains of precious metal, brooches, earrings, jewelry rings, pendants, ankle bracelets, cuff links, studs made of precious metal |
| ALHAMBRA | 3489019 | August 19, 2008 | Jewelry; clock and watch making, namely, watches, watch bracelets, chronometers, clocks, horological and chronometric instruments and cases therefore |
| VCA | 1584572* | February 27, 1990 | Jewelry |
|  | 2692672* | March 4, 2003 | Goods made of precious metals or coated therewith, namely button covers, hair ornaments, headbands, buckles, jewelry, precious stones, phonological and chronometrical instruments, namely chronometers, chronographs for use as watches; necklaces; chains, clips, ear clips, stud earrings, rings and pendants, all being jewelry; watches, watch bracelets, clocks |

Printouts detailing the registration information for the above marks are attached hereto as Exhibit

D. These registrations are all valid, subsisting and in full force and effect. The registrations

identified above with an asterisk have become incontestable under Section 15 of the Lanham

Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered mark, of

the registration of the mark, and of Van Cleef & Arpels's exclusive right to use the mark in

commerce on or in connection with the products for which the mark is registered, as provided by

Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b). Collectively, the marks shown in

Exhibits C and D are herein referred to as the "VAN CLEEF & ARPELS Marks," which,

together with the CARTIER Marks, are herein referred to collectively as "Plaintiffs' Marks."

27.     Van Cleef & Arpels has extensively advertised and promoted the products manufactured, sold and offered for sale under the VAN CLEEF & ARPELS Marks. The VAN CLEEF & ARPELS Marks immediately indicate Van Cleef & Arpels as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

28.     Van Cleef & Arpels's products are sold throughout the United States, both through Van Cleef & Arpels's own boutiques and in additional authorized retail stores. Van Cleef & Arpels sells millions of dollars of products under the VAN CLEEF & ARPELS Marks every year.

29.     The products distributed by Van Cleef & Arpels bearing the VAN CLEEF & ARPELS Marks are of the highest quality, and are subject to exacting quality control standards. Van Cleef & Arpels takes pains to ensure the quality of its products by monitoring their production and distribution. As a result of these efforts, Van Cleef & Arpels has developed a reputation for providing the highest-quality products under the VAN CLEEF & ARPELS Marks, and consumers have come to expect that products bearing the VAN CLEEF & ARPELS Marks are of the highest quality and workmanship.

30.     Van Cleef & Arpels also has expended large sums of money in advertising and promoting to the trade and the public the VAN CLEEF & ARPELS Marks and the products sold under those marks.

31.     Through Van Cleef & Arpels's significant investment of time, money and effort, widespread sales, and the high quality of Van Cleef & Arpels products sold under or in connection with its VAN CLEEF & ARPELS Marks, the VAN CLEEF & ARPELS Marks and trade name have acquired enormous value and have become extremely well-known to the consuming public and trade as identifying and distinguishing the source of Van Cleef & Arpels's

products exclusively and uniquely. Because of the great public acceptance of VAN CLEEF &
ARPELS brand products, the VAN CLEEF & ARPELS Marks and trade name have come to
represent enormous goodwill and are famous throughout the United States.

C. `  DEFENDANTS' UNLAWFUL ACTIVITIES

32.     Defendant Daniel Markus Jewelers is in the business of selling costly jewelry and
watches. On information and belief, Daniel Markus Jewelers currently sells jewelry out of its
stores in Newark, Summit and Bloomfield, New Jersey, and over the Internet, both through its
own website located at http://www.dmjewel.com and through eBay using the moniker "dmjq."

33.     Defendants, without authorization or license from Plaintiffs, have knowingly and
willfully used and continue to use Plaintiffs' Marks in connection with Defendants'
advertisement, offering for sale, sale and distribution of counterfeit goods, namely, jewelry and
watches. Upon information and belief, Defendants have manufactured the counterfeit goods
without authorization or license from Plaintiffs and/or have purchased the counterfeit goods from
a source or sources that are not authorized or licensed by Plaintiffs to manufacture, offer for sale,
or sell products bearing Plaintiffs' Marks.

34.     In or about February 2007, Plaintiffs discovered Daniel Markus Jewelers on eBay
and noticed that Daniel Markus Jewelers was offering numerous jewelry and watches under the
Plaintiffs' Marks. Plaintiffs' suspicions were raised upon discovering that Daniel Markus
Jewelers was offering for sale a new ring from Van Cleef & Arpels's "Oieaux de Paradis"
("Birds of Paradise") collection, of which only a few pieces are available globally, none of which
had been provided to Daniel Markus Jewelers which is not, in any event, an authorized Van
Cleef & Arpels dealer. To find out how Daniel Markus Jewelers had acquired this piece and
several other pieces of Van Cleef & Arpels jewelry, Plaintiffs hired an investigator to purchase

Defendants' Birds of Paradise ring and a bracelet advertised as part of Van Cleef & Arpels's ALHAMBRA collection.

35.    On or about February 25, 2009, Defendants, acting through Defendant Daniel Risis, sold a counterfeit Birds of Paradise ring and counterfeit ALHAMBRA bracelet to Plaintiffs' investigator.  The Daniel Markus Jewelers products sold to Plaintiffs' investigator, shown in Exhibit E hereto, bear a number of the VAN CLEEF & ARPELS Marks and each came with a forged "Certificate of Authenticity" that duplicates the genuine Van Cleef & Arpels certificate.  Van Cleef & Arpels examined the products and determined them to be counterfeits based on numerous points of differentiation between Defendants' products and authentic Van Cleef & Arpels merchandise.

36.    On or about March 6, 2010, Plaintiffs' investigator ordered from Defendants what Defendants advertised and promoted as a Cartier platinum wedding ring.  Cartier received this ring on March 11, 2010, and examined it.  On information and belief, the ring is counterfeit.

37.    On or about March 15, 2010, Plaintiffs' investigator purchased from Defendants what Defendants advertised and promoted as a Cartier ten-diamond 18k gold LOVE bracelet.  That same day, Cartier examined the bracelet, and on March 17, 2010 determined that it was counterfeit.  That bracelet also was accompanied by a counterfeit certificate of authenticity.  Attached hereto as Exhibit F is a picture of the bracelet purchased from Defendants and the accompanying counterfeit certificate of authenticity.

38.    Since discovering Defendants' counterfeit activities, Plaintiffs have discovered at least one consumer who purchased three products sold by Defendants while under the belief that the products were genuine Van Cleef & Arpels merchandise.  The products purchased by this

consumer were sold by Daniel Markus Jewelers under and/or bear the VAN CLEEF & ARPELS, VCA and ALHAMBRA marks.

39.     Upon information and belief, in addition to the counterfeit products purchased by Plaintiffs' investigators and shown in the exhibits attached hereto, and in addition to the products purchased by the confused consumer described above, on information and belief, Defendants' sell and offer to sell numerous counterfeit products under and/or bearing one or more of Plaintiffs' Marks (all such products collectively, "Counterfeit Products").   Printouts from Defendants' website and eBay store showing products bearing and/or being offered under one or more of Plaintiffs' Marks and believed to be Counterfeit Products are attached hereto as Exhibit G.

40.     Upon information and belief, the Counterfeit Products being manufactured, advertised, offered for sale, sold and distributed by Defendants are not genuine Cartier or Van Cleef & Arpels products.  Plaintiffs have not authorized Defendants to manufacture, advertise, offer for sale, sell or distribute the Counterfeit Products or to use any of Plaintiffs' Marks.

41.     Upon information and belief, Defendants receive and store inventory of the Counterfeit Products at facilities located in the United States, including at 221 Washington Street, Newark, New Jersey 07102; 417 Broad Street, Bloomfield, New Jersey 07003; and at 402 Springfield Avenue, Summit, New Jersey 07901.  Upon information and belief, Defendants also ship the counterfeit products from these and various other locations throughout the United States.

42.     Upon information and belief, by virtue of Plaintiffs' extensive and ongoing use and advertising of Plaintiffs' marks, Defendants were on actual notice of Plaintiffs' exclusive rights in Plaintiff's marks.   In addition, Plaintiffs' federal registrations put Defendants on constructive notice of Plaintiffs' exclusive rights in Plaintiffs Marks.

43.     Upon information and belief, Defendants know, and at all relevant times knew, that the products they are selling using Plaintiff's Marks are counterfeit versions of Plaintiffs' products.

E.     EFFECT OF DEFENDANTS' CONDUCT

44.     Defendants' aforesaid activities have already caused and are in the future likely to continue to cause confusion among potential customers, who will be deceived into believing that Defendants' counterfeit goods – which are priced in the thousands, tens of thousands, and even hundreds of thousands of dollars – are genuine products of Plaintiffs.

45.     Defendants' aforesaid conduct is harming the public.

46.     The aforesaid conduct is also causing Plaintiffs irreparable harm, for which there is no adequate remedy at law.

### FIRST CLAIM FOR RELIEF –
### FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. § 1114(1))

47.     Plaintiffs repeat and reallege Paragraphs 1 through 46 as if fully set forth herein.

48.     Plaintiffs' Marks are distinctive and of incalculable value, and are associated in the public mind with Plaintiffs' goods and services of the highest quality.

49.     Without Plaintiffs Cartier International AG and Van Cleef & Arpels S.A's authorization or license, and, upon information and belief, with knowledge of Plaintiffs Cartier International AG and Van Cleef & Arpels S.A's prior rights in Plaintiffs' Marks, Defendants have advertised, offered for sale, sold and distributed Countefeit Products under and/or bearing Plaintiffs' Marks.

50.     Defendants' advertising, offering for sale, sale and distribution of counterfeit jewelry and watches bearing the CARTIER and VAN CLEEF & ARPELS Marks is likely to

cause confusion, mistake or deception as to the source or sponsorship of Defendants' goods. As a result of Defendants' unauthorized use of Plaintiffs Cartier International AG and Van Cleef & Arpels S.A.'s federally registered trademarks, the public is likely to believe that Defendants' Counterfeit Products have been manufactured and/or approved by Plaintiffs Cartier International AG and Van Cleef & Arpels S.A. Such use falsely represents Defendants as being legitimately connected with and/or authorized by Plaintiffs Cartier International AG and Van Cleef & Arpels S.A., and places beyond their control their own reputation and ability to control the use of Plaintiffs' Marks or the quality of the products bearing those marks.

51.     Defendants' infringement of Plaintiffs' Marks is willful, intended to reap the benefit of the goodwill of Plaintiffs Cartier International AG and Van Cleef & Arpels S.A, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

52.     The aforesaid conduct of Defendants is causing immediate and irreparable injury to Plaintiffs Cartier International AG and Van Cleef & Arpels S.A and to their goodwill and reputation, and will continue to damage Plaintiffs Cartier International AG and Van Cleef & Arpels S.A and deceive the public unless preliminarily and permanently enjoined by this Court.

53.     Plaintiffs Cartier International AG and Van Cleef & Arpels S.A have no adequate remedy at law.

### SECOND CLAIM FOR RELIEF – FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)(1)(A))

54.     Plaintiffs repeat and reallege Paragraphs 1 through 55 as if fully set forth herein.

55.     Plaintiffs' Marks are distinctive and of incalculable value, and are associated in the public mind with Plaintiffs and goods and services of the highest quality.

56.     Without Plaintiffs' authorization or license and, upon information and belief, with knowledge of Plaintiffs' prior rights in Plaintiffs' Marks, Defendants have advertised, offered for sale, sold and distributed Counterfeit Products under and/or bearing Plaintiffs' Marks.

57.     Defendants' unauthorized use of copies of Plaintiffs' Marks is likely to cause confusion, to cause mistake, or to deceive consumers and the trade as to the origin, sponsorship, or approval of Defendants' products.  As a result of Defendants' unauthorized uses of imitations of Plaintiffs' Marks in connection with counterfeit products, the public is likely to believe that Defendants' goods have been manufactured and/or approved by Plaintiffs.  Such use falsely represents Defendants as being legitimately affiliated, connected, or associated with and/or authorized by Plaintiffs and places Plaintiffs' reputations beyond their own control.

58.     Defendants' conduct is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

59.     The aforesaid conduct of Defendants is causing immediate and irreparable injury to Plaintiffs and to their goodwill and reputation, and will continue both to damage Plaintiffs to and deceive the public unless preliminarily and permanently enjoined by this Court.

60.     Plaintiffs have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF –
### FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

61.     Plaintiffs repeat and reallege Paragraphs 1 through 60 as if fully set forth herein.

62.     Plaintiffs Cartier International AG and Van Cleef & Arpels S.A's CARTIER Marks and VAN CLEEF & ARPELS Marks are distinctive, federally registered trademarks.  As a result of their extensive and exclusive use of Plaintiffs' Marks in connection with their products, Plaintiffs' Marks have become famous and are widely recognized among the consuming public as a designation of source of Plaintiffs Cartier International AG and Van Cleef

& Arpels S.A's goods. Plaintiffs' Marks became famous long before Defendants' infringing activities commenced.

63.    Defendants' commercial use of marks identical to Plaintiffs' CARTIER and VAN CLEEF & ARPELS marks for goods that are not manufactured or controlled by, affiliated with or sponsored by Plaintiffs Cartier International AG and Van Cleef & Arpels S.A has diluted and is continuing to dilute the distinctive quality of Plaintiffs' CARTIER and VAN CLEEF & ARPELS marks by lessening the capacity of those marks to exclusively identify and distinguish Plaintiffs Cartier International AG and Van Cleef & Arpels S.A and their goods, and by tarnishing them through association with Defendants' goods which are of poor quality and workmanship.

64.    Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of Plaintiffs Cartier International AG and Van Cleef & Arpels S.A's CARTIER and VAN CLEEF & ARPELS marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The aforesaid conduct is causing Plaintiffs Cartier International AG and Van Cleef & Arpels S.A. irreparable harm, and, unless restrained, will continue to cause irreparable harm, for which Plaintiffs Cartier International AG and Van Cleef & Arpels S.A have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF –
## STATUTORY UNFAIR COMPETITION
## N.J.S.A. § 56:4-1 *et seq.*

65.    Plaintiffs repeat and reallege paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.    Defendants' acts set out above constitutes unlawful, unfair, or fraudulent business practices in violation of N.J.S.A. § 56:4-1 et seq.

67.     By reason of Defendants' infringing activities, Defendants have damaged and caused irreparable harm to Plaintiffs and, unless restrained, will continue to damage and cause irreparable injury to Plaintiffs' goodwill and reputation.

68.     Defendants' acts have injured and will continue to injure Plaintiffs by, among other things, siphoning customers, diluting Plaintiffs' distinctive marks, confusing customers and injuring Plaintiffs' reputations.

69.     On information and belief, Defendants have profited from their unlawful acts.

70.     Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF –
STATE TRADEMARK DILUTION
(N.J.S.A. § 56:3-13.20)**

71.     Plaintiffs repeat and reallege paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.     Defendants' acts set out above are likely to dilute the distinctive quality of the Plaintiffs Cartier International AG and Van Cleef & Arpels S.A's CARTIER Marks and VAN CLEEF & ARPELS, in violation of N.J.S.A. § 56:3-13.20.

73.     Defendants acts set out above have caused, and unless enjoined by this Court, will continue to cause great and irreparable injury to Plaintiffs Cartier International AG and Van Cleef & Arpels S.A.

74.     Plaintiffs Cartier International AG and Van Cleef & Arpels S.A. have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF –
## COMMON LAW UNFAIR COMPETITION

75.     Plaintiffs repeat and reallege paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     Defendants have injured Plaintiffs by depriving them of sales of their genuine goods, by injuring their business reputation and by passing off Defendants' goods as Plaintiffs' genuine products.  Defendants' conduct is likely to confuse a prospective buyer or customer exercising ordinary caution in his dealings as to the origin, source, or sponsorship of Defendants' products, or to cause mistake or to deceive the public into believing that Defendants' goods originate with or are otherwise authorized by Plaintiffs.

77.     Defendants' unauthorized use of Plaintiffs' Marks is with full knowledge of Plaintiffs' prior use of those marks in the United States, with full knowledge of the substantial reputation and goodwill associated with Plaintiffs and those marks, and with full knowledge that Defendants have no license or authority to use Plaintiffs' Marks.  By appropriating the enormous goodwill of the Plaintiffs' Marks, Defendants unjustly enrich themselves and damage Plaintiffs.

78.     Defendants' conduct constitutes unfair competition with Plaintiffs under the common law of New Jersey.  This conduct is causing immediate and irreparable injury to Plaintiffs and to their goodwill and reputation, and will continue both to damage Plaintiffs and to deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment as follows:

1.     That an *ex parte* temporary injunction and preliminary and permanent injunctions be issued enjoining Defendants, any of their respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity

22

owned or controlled in whole or substantial part by any of the Defendants, who receives actual notice of the order by personal service or otherwise, from:

    (a)    using any of Plaintiffs' trademarks or trade names or domain names, including but not limited to those identified in the Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks or trade names or domain names in or as part of any design or logo or otherwise on or in connection with any goods or on or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination or distribution of any goods;

    (b)    using any of Plaintiffs' trademarks or trade names or domain names, including but not limited to the those identified in the Complaint above, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks or trade names or domain names in or as part of any logo, business name, trade name, website identifier, website address, domain name, e-mail address or in any other means of identification;

    (c)    processing, packaging, importing or transporting any product that is not a genuine product of Plaintiffs bearing any of Plaintiffs' trademarks or trade names or domain names or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' trademarks or trade names or domain names;

    (d)    using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that the Defendants are

associated with Plaintiffs or that any product imported, manufactured, distributed, or sold by the Defendants is in any manner associated or connected with either of Plaintiffs, or is authorized, licensed, sponsored or otherwise approved by either of Plaintiffs;

(e)     purchasing any of Plaintiffs' trademarks or trade names or domain names in connection with any sponsored advertising on the Internet or using any of Plaintiffs' trademarks in any source code or metatags or otherwise using Plaintiffs' trademarks or trade names or domain names such that a search for Plaintiffs on the Internet will cause any domain name, website or advertisement for the Defendants, or any company or business that is owned or controlled by either of them, to appear in search results;

(f)     utilizing any of Plaintiff's trademarks or trade names or domain names in connection with the sending of any emails;

(g)     engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of any of Plaintiffs' trademarks or trade names or domain names;

(h)     engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks or trade names or domain names;

(i)     applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of any of Plaintiffs' trademarks or trade names or domain names or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks or trade names; and

(j)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (i) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiffs' trademarks or trade names or domain names, including but not limited to building or creating websites for others, hosting websites for others, providing technical or other support for any e-commerce transactions that concern or relate to the sale of counterfeit or infringing goods.

2.     That Defendants be ordered to, at their own expense, immediately deliver up for destruction their entire inventory of goods bearing any of Plaintiffs Marks.

3.     That Defendants, at their own expense, recall any and all products that bear any copies or counterfeits of any of Plaintiffs' trademarks from any distributors, retailers, vendors or others to whom the Defendants have distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof upon them.

4.     That Defendants deliver up to Plaintiffs' attorney for destruction, within five (5) days days after service of judgment with notice of entry thereof upon them, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in their possession or under their control or (b) recalled by the Defendants pursuant to any order of the Court or otherwise, incorporating, featuring or bearing any of Plaintiffs' trademarks or trade names or domain names or that include any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' trademarks or trade names or

domain names, and all plates, molds, matrices and other means of making the same, and that Plaintiff be permitted to destroy all such goods without compensation to any of the Defendants.

5.   That the Defendants preserve all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents, whether in electronic format or otherwise, concerning all transactions relating to their sale of any goods bearing or including any copies or counterfeits of any of Plaintiffs' trademarks or trade names or domain names or that otherwise infringe on any of Plaintiffs' trademarks or trade names or domain names, and that all such materials be made available to Plaintiffs for review, inspection and copying on Plaintiffs' request.

6.   That Defendants provide Plaintiffs with the names, addresses and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the source of all products that bear or include counterfeits or copies of any of Plaintiffs' trademarks or trade names or domain names or that otherwise are intended to copy Plaintiffs' products, including all manufacturers, distributors and/or suppliers.

7.   The Defendants shall file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which they have complied with all of the above.

8.   That each Defendant account for and pay over to Plaintiffs three times the profits realized by said Defendant from its infringement of the Plaintiffs' trademarks and trade names and from its unfair competition with Plaintiffs.

9.   That Plaintiffs be awarded monetary relief, including Defendants' profits; Plaintiffs' actual damages; trebled damages and/or increased profits as provided to 15 U.S.C. §

1117(a); trebled profits or damages, or, if Plaintiffs elect, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(b) & (c); and punitive and/or enhanced damages as provided for under law including N.J.S.A. 56:4-1, arising out of Defendants' acts of willful trademark infringement and counterfeiting, unfair competition and dilution.

10.     That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums.

11.     That Plaintiffs be awarded their costs in this civil action, including reasonable attorney's fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

12.     That any bank accounts of the Defendants shall be frozen pending payment to Plaintiffs as required hereunder and Plaintiffs may execute a judgment against any bank accounts of the Defendants to obtain the amounts required to be paid to Plaintiffs hereunder.

13.     That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

ROBINSON WETTRE & MILLER LLC

By: _____
        Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: (973) 690-5400
kmiller@rwmlegal.com

*OF COUNSEL:*

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    John P. Margiotta (*pro hac vice* application pending)
    Laura Popp-Rosenberg (*pro hac vice* application pending)
    866 United Nations Plaza
    New York, New York 10017

Tel: (212) 813-5900
jmargiotta@frosszelnick.com
lpopp-rosenberg@frosszelnick.com

Attorneys for Plaintiffs

Dated: March 22, 2010

# EXHIBIT A

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:37:13 ET

**Serial Number:** 71471851 Assignment Information          Trademark Document Retrieval

**Registration Number:** 411239

**Mark (words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2005-03-16

**Filing Date:** 1944-07-01

**Transformed into a National Application:** No

**Registration Date:** 1945-01-09

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)


**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 834 -Post Registration

**Date In Location:** 2005-03-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL, BV

**Address:**
CARTIER INTERNATIONAL, BV
HERENGRACHT 436 B.P.
AMSTERDAM
Netherlands
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**U.S. Class:** 028 (International Class 008, 014)

**Class Status:** Active

PRECIOUS-METAL WARE-NAMELY, THE FOLLOWING ARTICLES MADE, IN WHOLE OR IN PART, OF PRECIOUS METALS OR PLATED WITH THE SAME;;, COMBS, JEWEL BOXES, FOBS,, BRACELETS, WATCH BRACELETS AND BUCKLES THEREFORE, NOT INCLUDING WATCHES, CUFF LINKS,, SHIRT STUDS,, BROOCHES,, EARRINGS, EYEGLASS CASES, CIGARETTE CASES CIGARETTE AND CIGAR HOLDERS, CIGARETTE LIGHTERS, HUMIDORS AND ASH TRAYS, MIRROR FRAMES,, ENVELOPE OPENERS, WALLETS, MONEY CLIPS, PERFUME BOTTLES,, DESK SETS, HANDBAGS, FLATWARE AND HOLLOWWEAR, VASES, TEA AND COFFE SERVICES,, TOILET ARTICLES,, KEY CHAINS, FINGER RINGS,, CANDLESTICKS

**Basis:** 1(a)

**First Use Date:** 1859-12-31

**First Use in Commerce Date:** 1859-12-31

---

## ADDITIONAL INFORMATION

**Prior Registration Number(s):**
144363

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2009-12-16 - Notice Of Suit

2009-05-06 - Notice Of Suit

2008-06-25 - Notice Of Suit

2008-06-23 - Notice Of Suit

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2005-03-16 - Third renewal 10 year

2005-03-16 - Section 8 (10-year) accepted/ Section 9 granted

2005-01-21 - Combined Section 8 (10-year)/Section 9 filed

2005-01-21 - PAPER RECEIVED

2003-09-29 - PAPER RECEIVED

1985-04-16 - Second renewal

1984-08-20 - Section 9 filed/check record for Section 8

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
HELEN M. O'SHAUGHNESSY

**Correspondent**
HELEN M. O'SHAUGHNESSY
2 EAST 52ND STREET
NEW YORK, NY 10022

---

http://tarr.uspto.gov/tarr?regser=registration&entry=0759...

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:36:02 ET

**Serial Number:** 72146163 Assignment Information          Trademark Document Retrieval

**Registration Number:** 759201

**Mark (words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2003-09-12

**Filing Date:** 1962-06-08

**Transformed into a National Application:** No

**Registration Date:** 1963-10-29

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 830 -Post Registration

**Date In Location:** 2009-03-11

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Cartier, Incorporated

**Address:**
Cartier, Incorporated

New York, NY
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**U.S. Class:** 027 (International Class 014)
**Class Status:** Active
Watches and Clocks
**Basis:** 1(a)
**First Use Date:** 1859-00-00
**First Use in Commerce Date:** 1859-00-00

## ADDITIONAL INFORMATION

**Section 2(f)**

**Prior Registration Number(s):**
411975

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2009-12-16 - Notice Of Suit

2009-01-27 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2006-08-30 - Review Of Correspondence Complete

2003-09-29 - PAPER RECEIVED

2003-09-12 - Second renewal 10 year

2003-09-12 - Section 8 (10-year) accepted/ Section 9 granted

2003-06-23 - Combined Section 8 (10-year)/Section 9 filed

2003-06-23 - PAPER RECEIVED

1984-10-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1983-10-29 - First renewal

1983-10-11 - First renewal

## ATTORNEY/CORRESPONDENT INFORMATION

(NOT AVAILABLE)

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:36:41 ET

**Serial Number:** 72146164 Assignment Information          Trademark Document Retrieval

**Registration Number:** 759202

**Mark (words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2003-12-02

**Filing Date:** 1962-06-05

**Transformed into a National Application:** No

**Registration Date:** 1963-10-29

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2008-10-30

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL, B.V.

**Address:**
CARTIER INTERNATIONAL, B.V.
HERENGRACHT 436 B.P.
AMSTERDAM
Netherlands
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Netherlands

---

### GOODS AND/OR SERVICES

**U.S. Class:** 028 (International Class 014)
**Class Status:** Active
Articles of Jewelry for Personal Wear, Not Including Watches; and the Following Goods of
Solid or Plated Silverware-Namely, Table Flatware and Hollow-Ware, Toilet Articles,
Candelabra, Bonbon-Cases, Jewelry Cases, ((Crosses, Rosaries, ))and Buckles
**Basis:** 1(a)
**First Use Date:** 1859-00-00
**First Use in Commerce Date:** 1859-00-00

---

## ADDITIONAL INFORMATION

**Section 2(f)**

**Prior Registration Number(s):**
411240

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2009-03-31 - Notice Of Suit

2008-10-30 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2003-12-02 - Second renewal 10 year

2003-12-02 - Section 8 (10-year) accepted/ Section 9 granted

2003-09-29 - PAPER RECEIVED

2003-09-15 - Combined Section 8 (10-year)/Section 9 filed

2003-09-15 - PAPER RECEIVED

1984-10-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1983-10-29 - First renewal

1983-09-06 - First renewal

http://tarr.uspto.gov/tarr?regser=registration&entry=0759...

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
HELEN M. O'SHAUGHNESSY
2 EAST 52ND STREET
NEW YORK, NEW YORK 10022

# EXHIBIT B

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:39:28 ET

**Serial Number:** 79041537 Assignment Information          Trademark Document Retrieval

**Registration Number:** 3476888

**Mark**

# BALLON BLEU

**(words only):** BALLON BLEU

**Standard Character claim:** Yes

**Current Status:** Registered.

**Date of Status:** 2008-07-29

**Filing Date:** 2007-03-01

**Transformed into a National Application:** No

**Registration Date:** 2008-07-29

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 113

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2008-07-29

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Cartier International N.V., a holding and trading company; organized and existing under the; laws of the Netherlands Antilles

**Address:**
Cartier International N.V., a holding and trading company; organized and existing under the; laws of the Netherlands Antilles
Scharlooweg 33 Curaçao
Netherld Antilles

**Legal Entity Type:** NAAMLOZE VENNOOTSCHAP (NV)
**State or Country Where Organized:** Netherld Antilles

---

## GOODS AND/OR SERVICES

---

**International Class:** 003
**Class Status:** Active
Soaps for personal use; perfumery, essential oils, cosmetics, hair lotion
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 009
**Class Status:** Active
Eyeglasses, sunglasses, eyeglass frames and cases, magnifying glasses
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 014
**Class Status:** Active
Goods in precious metals and coated therewith, namely, cuff-links, tie clips, rings being
jewelry, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps,
watch bracelets, boxes of precious metals for watches and jewellery
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 016
**Class Status:** Active
Pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, rollerball pens,
document markers, writing brushes; sealing waxes; pouches, cases and boxes for writing
instruments; inks for writing instruments and ink refills for writing instruments; note paper,
writing paper, note pads, memo pads; name cards, envelopes, diaries; calendars; paperweights,
erasers, pencil sharpeners, paper knives, pen and pencil holders; paintings, engravings
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 018
**Class Status:** Active
Leatherware, namely, briefcases, travelling sets in the nature of sets of suitcases and travelling
bags, vanity cases sold empty, key cases; goods made of leather and imitations of leather, not
included in other classes, namely, attaché cases, wallets, handbags, backpacks, travelling bags,
wheeled tote bags, trunks, suitcases, purses not of precious metal, credit and business card
cases, pouches; bands of leather in the nature of leather straps for use with bags; umbrellas,
parasols, walking sticks, whips and saddlery
**Basis:** 66(a)

**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 025
**Class Status:** Active
Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats and stoles, hosiery, jackets, pullovers, pajamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces in the nature of suspenders, gloves, mufflers, sashes for wear, scarves, shawls, suspenders, ties, bow ties; boots, shoes and slippers, caps and hats
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 034
**Class Status:** Active
Lighters for smokers; smokers' articles, namely, cigarette holders, cigarette and cigar cases, cigar cutters, humidors and ashtrays
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

**Translation:** The English translation of the foreign word in the mark is Blue Balloon.

---

## MADRID PROTOCOL INFORMATION

**International Registration Number:** 0931951
**International Registration Date:** 2007-03-01
**Priority Claimed:** Yes
**Date of Section 67 Priority Claim:** 2006-09-04
**International Registration Status:** Request For Extension Of Protection Processed
**Date of International Registration Status:** 2007-08-30
**International Registration Renewal Date:** 2017-03-01
**Notification of Designation Date:** 2007-08-30
**Date of Automatic Protection:** 2009-02-28
**Date International Registration Cancelled:** (DATE NOT AVAILABLE)
**First Refusal:** Yes

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-11-18 - Final Disposition Notice Sent To IB

2008-11-18 - Final Disposition Processed

2008-10-30 - Final Disposition Notice Created, To Be Sent To IB

2008-07-29 - Registered - Principal Register

2008-05-13 - Published for opposition

2008-04-23 - Notice of publication

2008-04-08 - Law Office Publication Review Completed

2008-04-01 - Assigned To LIE

2008-03-21 - Approved for Pub - Principal Register (Initial exam)

2008-03-03 - Teas/Email Correspondence Entered

2008-03-03 - Communication received from applicant

2008-03-03 - TEAS Response to Office Action Received

2007-09-20 - Refusal Processed By IB

2007-09-04 - Non-Final Action Mailed - Refusal Sent To IB

2007-09-04 - Refusal Processed By MPU

2007-09-02 - Non-Final Action (Ib Refusal) Prepared For Review

2007-09-01 - Non-Final Action Written

2007-08-31 - Assigned To Examiner

2007-08-31 - New Application Entered In Tram

2007-08-30 - Sn Assigned For Sect 66a Appl From IB

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
Curaçao Trade Mark Agency, Inc.
L.B. Smithplein 3
Curaçao
NETHERLD ANTILLES

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:38:03 ET

**Serial Number:** 73746272 Assignment Information     Trademark Document Retrieval

**Registration Number:** 1535215

**Mark**



**(words only):** C

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2009-10-20

**Filing Date:** 1988-08-15

**Transformed into a National Application:** No

**Registration Date:** 1989-04-18

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** (NOT AVAILABLE)

**Date In Location:** 2009-10-20

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL, N.V.

**Address:**
CARTIER INTERNATIONAL, N.V.
Scharlooweg 33
Curacao
Netherld Antilles
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Not Provided

## GOODS AND/OR SERVICES

**International Class:** 014
**Class Status:** Active
BRACELETS, RINGS, EARRINGS
**Basis:** 1(a)
**First Use Date:** 1978-11-00
**First Use in Commerce Date:** 1978-11-00

## ADDITIONAL INFORMATION

**Prior Registration Number(s):**
925627
1153537
1461824

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2009-10-20 - First renewal 10 year

2009-10-20 - Section 8 (10-year) accepted/ Section 9 granted

2009-10-19 - TEAS Section 8 & 9 Received

2008-08-12 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2006-08-30 - Review Of Correspondence Complete

2003-09-29 - PAPER RECEIVED

1995-02-18 - Section 8 (6-year) accepted & Section 15 acknowledged

1994-07-25 - Section 8 (6-year) and Section 15 Filed

1989-04-18 - Registered - Principal Register

1989-01-24 - Published for opposition

1988-12-27 - Notice of publication

1988-12-24 - Notice of publication

1988-11-01 - Approved for Pub - Principal Register (Initial exam)

1988-10-18 - Examiner's amendment mailed

1988-10-05 - Assigned To Examiner

1988-10-04 - Assigned To Examiner

1988-09-30 - Assigned To Examiner

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Jeffrey Martin

**Correspondent**
Jeffrey Martin
Richemont North America
645 Fifth Avenue
NEW YORK NY 10022

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:35:46 ET

**Serial Number:** 71471859 Assignment Information          Trademark Document Retrieval

**Registration Number:** 411975

**Mark**



**(words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2005-01-05

**Filing Date:** 1944-07-01

**Transformed into a National Application:** No

**Registration Date:** 1945-02-13

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2009-01-27

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL, B.V.

**Address:**
CARTIER INTERNATIONAL, B.V.
HERENGRACHT 436 BP
AMSTERDAM
Netherlands
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Netherlands

## GOODS AND/OR SERVICES

**U.S. Class:** 027 (International Class 014)
**Class Status:** Active
Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing
the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of
Leather, Fabric and the Like for Protecting Them While Traveling
**Basis:** 1(a)
**First Use Date:** 1859-00-00
**First Use in Commerce Date:** 1859-00-00

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2009-12-16 - Notice Of Suit

2009-01-27 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2005-01-05 - Third renewal 10 year

2005-01-05 - Section 8 (10-year) accepted/ Section 9 granted

2004-11-17 - Combined Section 8 (10-year)/Section 9 filed

2004-11-17 - PAPER RECEIVED

2003-09-29 - PAPER RECEIVED

1985-02-13 - Second renewal

1984-08-20 - Section 9 filed/check record for Section 8

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
HELEN M. O'SHAUGHNESSY

**Correspondent**
HELEN M. O'SHAUGHNESSY
2 EAST 52ND STREET
NEW YORK, NY 10022

---

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:34:12 ET

**Serial Number:** 76091986 Assignment Information       Trademark Document Retrieval

**Registration Number:** 2703544

**Mark**



**(words only):** 21 CHRONOSCAPH

**Standard Character claim:** No

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 2009-03-31

**Filing Date:** 2000-07-20

**Transformed into a National Application:** No

**Registration Date:** 2003-04-08

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 103

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 830 -Post Registration

**Date In Location:** 2009-03-31

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. CARTIER INTERNATIONAL N.V.

**Address:**
CARTIER INTERNATIONAL N.V.
SCHARLOOWEG 33
CURACAO
Netherld Antilles
**Legal Entity Type:** Company
**State or Country Where Organized:** Netherld Antilles

## GOODS AND/OR SERVICES

**International Class:** 014
**Class Status:** Active
chronometers and watches
**Basis:** 1(a), 44(e)
**First Use Date:** 2000-03-21
**First Use in Commerce Date:** 2000-03-21

## ADDITIONAL INFORMATION

**Foreign Registration Number:** 0640086
**Foreign Registration Date:** 1998-07-02
**Country:** Benelux
**Foreign Expiration Date:** 2008-07-02

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2009-03-31 - Section 8 (6-year) accepted & Section 15 acknowledged

2009-03-19 - Assigned To Paralegal

2009-03-17 - TEAS Section 8 & 15 Received

2008-01-11 - Case File In TICRS

2007-10-03 - Automatic Update Of Assignment Of Ownership

2003-04-08 - Registered - Principal Register

2003-01-14 - Published for opposition

2002-12-25 - Notice of publication

2002-11-01 - Approved for Pub - Principal Register (Initial exam)

2002-10-29 - Assigned To Examiner

2002-10-29 - Previous allowance count withdrawn

2002-10-29 - Assigned To Examiner

2001-07-19 - Approved for Pub - Principal Register (Initial exam)

2001-05-10 - Communication received from applicant

2001-05-10 - Communication received from applicant

2001-02-07 - Non-final action mailed

2001-01-16 - Assigned To Examiner

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Jeffrey Martin

**Correspondent**
Jeffrey Martin
Richemont North America
645 Fifth Avenue
New York NY 10022
Phone Number: 9178063939

**Domestic Representative**
Helen M. O'Shaughnessy

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:39:42 ET

**Serial Number:** 79024262 Assignment Information          Trademark Document Retrieval

**Registration Number:** 3462423

**Mark**

# La Doña

**(words only):** LA DOÑA

**Standard Character claim:** Yes

**Current Status:** Registered.

**Date of Status:** 2008-07-08

**Filing Date:** 2006-03-07

**Transformed into a National Application:** No

**Registration Date:** 2008-07-08

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 117

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2008-07-08

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Cartier International N.V.

**Address:**
Cartier International N.V.
Scharlooweg 33 Curaçao
Netherld Antilles

**Legal Entity Type:** Limited Liability Company
**State or Country Where Organized:** Netherld Antilles

## GOODS AND/OR SERVICES

**International Class:** 014
**Class Status:** Active
Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes made of precious metals for watches and jewellery
**Basis:** 66(a)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

## ADDITIONAL INFORMATION

**Translation:** The foreign wording in the mark translates into English as "The Lady".

## MADRID PROTOCOL INFORMATION

**International Registration Number:** 0885975
**International Registration Date:** 2006-03-07
**Priority Claimed:** Yes
**Date of Section 67 Priority Claim:** 2005-09-07
**International Registration Status:** Request For Extension Of Protection Processed
**Date of International Registration Status:** 2006-07-06
**International Registration Renewal Date:** 2016-03-07
**Notification of Designation Date:** 2006-07-06
**Date of Automatic Protection:** 2008-01-06
**Date International Registration Cancelled:** (DATE NOT AVAILABLE)
**First Refusal:** Yes

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-11-21 - Final Decision Transaction Processed By IB

2008-10-23 - Final Disposition Notice Sent To IB

2008-10-23 - Final Disposition Processed

2008-10-08 - Final Disposition Notice Created, To Be Sent To IB

2008-07-08 - Registered - Principal Register

2008-04-22 - Published for opposition

2008-04-02 - Notice of publication

2008-03-14 - Law Office Publication Review Completed

2008-03-13 - Approved for Pub - Principal Register (Initial exam)

2008-03-12 - Teas/Email Correspondence Entered

2008-03-12 - Communication received from applicant

2008-03-11 - TEAS Response To Suspension Inquiry Received

2007-12-20 - Notification Of Possible Opposition - Processed By IB

2007-12-06 - Notification Of Possible Opposition Sent To IB

2007-12-06 - Notification Of Possible Opposition Created, To Be Sent To IB

2007-11-06 - Report Completed Suspension Check Case Still Suspended

2007-05-04 - Report Completed Suspension Check Case Still Suspended

2007-05-04 - Assigned To LIE

2006-10-26 - New Representative At IB Received

2006-10-20 - Letter of suspension mailed

2006-10-19 - Suspension Letter Written

2006-10-16 - Teas/Email Correspondence Entered

2006-09-20 - Communication received from applicant

2006-09-20 - TEAS Response to Office Action Received

2006-08-31 - Refusal Processed By IB

2006-08-14 - Non-Final Action Mailed - Refusal Sent To IB

2006-08-14 - Refusal Processed By MPU

2006-08-10 - Non-Final Action (Ib Refusal) Prepared For Review

2006-08-09 - Non-Final Action Written

2006-08-04 - Assigned To Examiner

2006-07-07 - New Application Entered In Tram

2006-07-06 - Sn Assigned For Sect 66a Appl From IB

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
Richemont Intellectual
Property Services
Chemin de la Chênaie 50
CH-1293 Bellevue, Switzerland

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:38:34 ET

**Serial Number:** 75824428 Assignment Information        Trademark Document Retrieval

**Registration Number:** 2566458

**Mark (words only):** LANIERES

**Standard Character claim:** No

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 2008-11-08

**Filing Date:** 1999-10-18

**Transformed into a National Application:** No

**Registration Date:** 2002-05-07

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 109

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 830 -Post Registration

**Date In Location:** 2008-11-08

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Cartier International B.V.

**Address:**
Cartier International B.V.
Herengracht 436 B.P.
3980 Amsterdam
Netherlands
**Legal Entity Type:** Company
**State or Country Where Organized:** Netherlands

---

### GOODS AND/OR SERVICES

**International Class:** 014
**Class Status:** Active
Ashtrays, boxes and cases for watches, jewellery and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts sold empty, and serving trays, all these made of precious metals or coated therewith; jewellery, precious gem stones; chronometers, clocks and watches
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

**Translation:** The English translation for "LANIERES" is "strips".

**Foreign Registration Number:** 0638759
**Foreign Registration Date:** 1999-09-14
**Country:** Benelux
**Foreign Expiration Date:** 2008-10-22

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-11-08 - Section 8 (6-year) accepted & Section 15 acknowledged

2008-11-04 - TEAS Section 8 & 15 Received

2008-05-20 - Notice Of Suit

2007-08-23 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2002-05-07 - Registered - Principal Register

2002-02-12 - Published for opposition

2002-01-23 - Notice of publication

2001-11-28 - ITU claim deleted

http://tarr.uspto.gov/tarr?regser=registration&entry=2566...

2001-04-24 - Notice of Allowance canceled

2001-11-08 - Reinstated

2001-08-29 - Abandonment - No use statement filed

2000-10-24 - Noa Mailed - SOU Required From Applicant

2000-08-01 - Published for opposition

2000-06-30 - Notice of publication

2000-05-14 - Approved for Pub - Principal Register (Initial exam)

2000-04-04 - Communication received from applicant

2000-03-07 - Non-final action mailed

2000-02-23 - Assigned To Examiner

2000-02-22 - Assigned To Examiner

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Jeffrey Martin

**Correspondent**
Jeffrey Martin
Richemont North America
2 East 52 Street
New York NY 10022

**Domestic Representative**
Helen M. O'Shaughnessy

Latest Status Info                                    http://tarr.uspto.gov/tarr?regser=registration&entry=3637...

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:37:32 ET

**Serial Number:** 77467536 Assignment Information          Trademark Document Retrieval

**Registration Number:** 3637776

**Mark**



**(words only):** LOVE

**Standard Character claim:** No

**Current Status:** Registered.

**Date of Status:** 2009-06-16

**Filing Date:** 2008-05-07

**Transformed into a National Application:** No

**Registration Date:** 2009-06-16

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 116

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2009-06-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Cartier International N.V.

**Address:**
Cartier International N.V.

http://tarr.uspto.gov/tarr?regser=registration&entry=3637...

Scharlooweg 33
Curacao
Netherld Antilles
**Legal Entity Type:** NAAMLOZE VENNOOTSCHAP (NV)
**State or Country Where Organized:** Netherld Antilles

---

## GOODS AND/OR SERVICES

---

**International Class:** 003
**Class Status:** Active
soaps, perfumery, essential oils, cosmetics, hair lotions
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 009
**Class Status:** Active
eyeglasses, sunglasses, eyeglass frames and cases, magnifying glasses, mobile phone straps
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 014
**Class Status:** Active
goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 016
**Class Status:** Active
money clips, pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, roller ball pens, document markers, pouches, cases and boxes for writing instruments, writing inks and pen ink refills, diaries, calendars, paperweights, paper knives, pen and pencil holders
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 018
**Class Status:** Active
leatherware, namely, briefcases, traveling luggage sets, unfitted vanity cases, and key cases, goods made of leather and imitations of leather, namely, attache-cases, wallets, handbags, backpacks, traveling bags, wheeled bags, trunks, suitcases, purses, name card cases, credit card cases, and pouches; umbrellas
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)

**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 025
**Class Status:** Active
clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats, hosiery,
jackets, pullovers, pyjamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts,
braces, gloves, mufflers, scarves, shawls, ties, bow ties, boots, shoes, slippers, caps, and hats
**Basis:** 44(e)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

**Color(s) Claimed:** Color is not claimed as a feature of the mark.

**Description of Mark:** The mark consists of a stylized version of the word "LOVE"

**Design Search Code(s):**
**26.17.01** - Bands, straight; Bars, straight; Lines, straight; Straight line(s), band(s) or bar(s)
**26.17.05** - Bands, horizontal; Bars, horizontal; Horizontal line(s), band(s) or bar(s); Lines,
horizontal

**Prior Registration Number(s):**
1005286

**Foreign Registration Number:** 13232
**Foreign Registration Date:** 2007-12-05
**Country:** Netherld Antilles
**Foreign Expiration Date:** 2017-12-05

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2009-06-16 - Registered - Principal Register

2009-03-31 - Published for opposition

2009-03-11 - Notice of publication

2009-02-23 - Law Office Publication Review Completed

2009-02-23 - Assigned To LIE

2009-02-17 - Approved for Pub - Principal Register (Initial exam)

2009-02-13 - Teas/Email Correspondence Entered

2009-02-12 - Communication received from applicant

2009-02-12 - TEAS Response to Office Action Received

2009-02-12 - TEAS Change Of Correspondence Received

2008-08-23 - Notification Of Non-Final Action E-Mailed

2008-08-23 - Non-final action e-mailed

2008-08-23 - Non-Final Action Written

2008-08-22 - Assigned To Examiner

2008-05-13 - Notice Of Design Search Code Mailed

2008-05-12 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Jeffrey Martin

**Correspondent**
Caroline G. Boehm
Kalow & Sprigut LLP
19 FL
488 Madison Avenue
New York NY 10022
Phone Number: (212) 813-1600

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-03-10 11:38:48 ET

**Serial Number:** 73427437 Assignment Information          Trademark Document Retrieval

**Registration Number:** 1291984

**Mark (words only):** MUST DE CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2004-08-05

**Filing Date:** 1983-05-25

**Transformed into a National Application:** No

**Registration Date:** 1984-08-28

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2008-05-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL B.V.

**Address:**
CARTIER INTERNATIONAL B.V.
HERENGRACHT 436 B.P.
AMSTERDAM
Netherlands
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Netherlands

---

## GOODS AND/OR SERVICES