NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARTIER INTERNATIONAL AG, et al., | Civil Action No.: 10-1459 (JLL) |
| Plaintiffs | |
| v. | **ORDER** |
| DANIEL MARKUS, INC. et al., | |
| Defendants. | |

     Currently before this Court is a Motion for Default Judgment filed by plaintiffs Cartier International AG; Cartier, a division of Richemont North America; and Van Cleef & Arpels, S.A. (collectively, "Plaintiffs") on August 12, 2011 (Docket Entry No. 71), moving for a default judgment and order against Defendant Concept Designs Unlimited, Inc. ("Defendant" or "Concept Designs") on all of Plaintiffs' claims against it.  This matter was commenced on March 22, 2010 by Plaintiffs' filing a complaint charging each of Daniel Markus, Inc., D & M Jewelry Inc., Daniel Risis and Margarita Risis with unlawfully promoting, distributing and selling counterfeit jewelry products that use imitations of Plaintiffs' CARTIER and VAN CLEEF & ARPELS trademarks, along with numerous other trademarks owned by these companies, in violation of Section 32(1) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1114(1); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Section 43©) of the Lanham Act, 15 U.S.C. § 1125©); N.J. Stat. Ann. § 56:4-1, *et seq.*; N.J. Stat. Ann. § 56:3-13.20; and New Jersey common law (the "Civil Action").  Plaintiffs filed an Amended Complaint on April 12, 2010, to add Zura Kazhiloti, Concept Designs Unlimited, Inc. ("CDU") and Market Street Holdings, LLC as additional defendants, and in that Amended Complaint retained the same charges against the originally named defendants.

     CDU has been duly served with the Summons and Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure and accepted service thereof with proof of such service filed with the Court on May 3, 2011 (Docket Entry No. 22).  CDU has failed to answer or

otherwise respond to the Amended Complaint, and the time for answering the Amended Complaint has expired.  Plaintiffs requested and obtained a clerk's entry of default against Defendant CDU before filing the present Motion (Docket Entry No. 58 and Docket at May 28, 2011).  The Court has considered Plaintiffs' submissions and, for the reasons set forth below, grants Plaintiffs' motion.

**IT IS HEREBY ORDERED ADJUDGED AND DECREED** as follows:

1. This is an action for trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution and tarnishment under Section 43©) of the Lanham Act, 15 U.S.C. § 1125©); unfair competition under N.J. Stat. Ann. § 56:4-1, *et seq*.; trademark dilution and tarnishment under N.J. Stat. Ann. § 56:3-13.20; and unfair competition under New Jersey common law. All of the claims arise out of or are based on the defendants' actions, including but not limited to the promotion, sale and distribution of counterfeit jewelry products that use imitations of Plaintiffs' CARTIER and VAN CLEEF & ARPELS trademarks, along with numerous other trademarks owned by these companies.

2. The Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and (b). The Court has supplemental jurisdiction over the state law claims in this matter under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

3. The Court has personal jurisdiction over CDU under Rule 4:4-4 of the New Jersey Rules of Court.

4. Venue is proper in this District pursuant to Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b).

5. Plaintiffs Cartier International AG and Cartier, a division of Richemont North America, Inc. (together, "Cartier") are suppliers of fine jewelry sold under the

CARTIER name and mark. Cartier owns and uses numerous trademarks in connection with its sale of jewelry, including but not limited to the CARTIER mark. The federally registered marks owned by Cartier that are relevant to the Civil Action are set forth in Exhibit 1 hereto. (Collectively, the trademarks identified in Exhibit 1 are herein referred to as the "CARTIER Marks.") The CARTIER Marks that are relevant to the calculation of statutory damages owed by CDU, as set forth herein, are designated by an asterisk in Exhibit 1.

6. Plaintiff Van Cleef & Arpels, S.A. ("Van Cleef & Arpels") is a supplier of fine jewelry sold under the VAN CLEEF & ARPELS name and mark. Van Cleef & Arpels owns and uses numerous trademarks in connection with its sale of jewelry, including but not limited to the VAN CLEEF & ARPELS mark. The federally registered marks owned by Van Cleef & Arpels that are relevant to the Civil Action are set forth in Exhibit 2 hereto. (Collectively, the trademarks referenced in Exhibit 2 are herein referred to as the "VAN CLEEF & ARPELS Marks." The CARTIER Marks and the VAN CLEEF & ARPELS Marks are collectively referred to herein as the "Plaintiffs' Marks.") The VAN CLEEF & ARPELS Marks that are relevant to the calculation of statutory damages owed by CDU, as set forth herein, are designated by an asterisk in Exhibit 2.

7. Based on the facts alleged in the Amended Complaint and on the evidence submitted by Plaintiffs in connection with their Motion for a Judgment on Default against CDU, which facts and evidence have not been denied or contested, CDU knowingly and willfully, and without authorization from Plaintiffs, manufactured, sold and distributed counterfeit jewelry products bearing or sold under Plaintiffs' Marks to some of the other defendants in this action, namely, Daniel Markus, Inc., D & M Jewelry Inc., Daniel Risis and Margarita Risis. (Am. Compl. ¶¶ 35-47).

8. Specifically, CDU was identified by defendant Daniel Risis as the supplier, beginning in the summer of 2009, for all of his Van Cleef & Arpels jewelry items as well as most of the Cartier jewelry items that he purchased. (Margiotta Default Decl. ¶5 (hereinafter, "D. Risis Tr."); Id., ¶ 10 33:23-34:11, 141:10-142:1).

CDU's invoices and bank records confirmed sales of inauthentic Cartier and Van Cleef & Arpels Jewelry from CDU to the Daniel Markus Defendants. (Fourth Decl. of John P. Margiotta, Esq., in Further Support of Plaintiffs' *Ex Parte* Application for (a) Temporary Restraining Order; (b) Order for Seizure; © Order to Show Cause for Preliminary Injunction; (d) Order Restraining Assets; and (e) Order for Expedited Discovery, Docket Entry No. 25 (hereinafter, "4th Margiotta TRO Decl.") ¶ 11; D. Risis Tr. 100:21-101:2; Margiotta Default Decl. ¶¶ 12-13; Pls.' Mot. for Default, Exs. K and I).

9. Subsequent to this Court's Order for Seizure (Docket Entry No. 16), Plaintiffs' counsel seized from CDU's offices 69 catalogues showing Cartier jewelry, 22 catalogues showing Van Cleef & Arpels jewelry, a jewelry reference book showing numerous jewelry designs, paper showing famous jewelers' hallmarks, and a letter from Defendant Kazhiloti to the French Trade Commission and French Chamber of Commerce requesting a reference book that would help him identify French jewelry makers that stamp a diamond symbol on their jewelry as Van Cleef & Arpels does. (Margiotta Default Decl., ¶ 15). A table showing the types of counterfeit goods in connection with which CDU has used trademarks owned by Plaintiffs, as well as the mark(s) used in connection with each type of good, is set forth in Exhibit 3 hereto.

10. On this motion for default judgment against CDU, this Court accepts all allegations in Plaintiffs' Amended Complaint as true. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Chanel, Inc. v. Guetae, 07 Civ. 3309, 2009 WL 1653137, at *2 (D.N.J. June 8, 2009)("Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint.")(citation omitted).

11. Plaintiffs have stated sufficient causes of action with regard to CDU's conduct constituting federal trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution

4

and tarnishment of Plaintiffs' trademarks under Section 43©) of the Lanham Act, 15 U.S.C. § 1125©); violation of New Jersey's state trademark dilution statute, N.J.S.A. § 56:3-13.20; statutory unfair competition under New Jersey law, N.J.S.A. § 56:4-1, *et seq.*; and unfair competition under New Jersey common law.

12. In granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default; and (3) the culpability of the party subject to default. Doug Brady Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008)(citing Emcasco Ins. Co. v. Sambrick. 834 F.2d 71, 73 (3d Cir. 1987). First, Defendant CDU has failed to file responsive pleadings regarding Plaintiffs' Motion for Default, and even though CDU counsel has appeared on behalf of CDU's principal, Defendant Kazhiloti, counsel has not appeared for CDU in this action to present any defense. Further, CDU's failure to answer has prejudiced Plaintiffs in preventing them from prosecuting their case, engaging in discovery and seeking relief. Accepting Plaintiffs' allegations to be true, Defendant CDU engaged in willful acts directed at Plaintiffs' Marks for which Plaintiffs have stated sufficient causes of action to find culpability.

13. Judgment is entered for Plaintiffs and against CDU on Plaintiffs' claims for federal trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution and tarnishment of Plaintiffs' trademarks under Section 43©)) of the Lanham Act, 15 U.S.C. § 1125©); violation of New Jersey's state trademark dilution statute, N.J.S.A. § 56:3-13.20; statutory unfair competition under New Jersey law, N.J.S.A. § 56:4-1, *et seq.*; and unfair competition under New Jersey common law.

14. This Court may grant permanent injunctive relief to remedy trademark counterfeiting and other violations established in Plaintiffs' Amended Complaint in order to prevent future infringement. See 15 U.S.C. § 1116(a). To obtain a permanent injunction, Plaintiffs must show: (1) the Court's exercise of equity

jurisdiction is proper; (2) the Plaintiffs succeeded on the merits; and (3) the balance of equities tips in favor of injunctive relief. Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 539 (D.N.J. 2008)(citing Roe v. Operation Rescue, 919 F.2d 857, 868 n.8 (3d Cir. 1990)).

15. In evaluating whether the Court's exercise of equity jurisdiction is proper, Plaintiffs must demonstrate: (1) they have no adequate legal remedy; (2) the threatened injury is real and not imagined; and (3) no equitable defenses exist. Id. Plaintiffs have no adequate legal remedy for CDU's violations of law due to the reputational harms caused by the infringement and the need to prevent future trade infringement by CDU. In addition, the threatened injury to Plaintiffs is real since Plaintiffs have shown that continued infringement threatens loss of control of reputation and potential loss of goodwill. See Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)(adding that "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury.")(quotation marks and citation omitted). Finally, CDU has raised no equitable defenses. Plaintiffs have thus shown that this Court's exercise of equity jurisdiction is proper.

16. As per ¶ 13 of this Opinion, Plaintiffs have demonstrated that CDU violated the Lanham Act and state law by distributing, selling and offering for sale goods bearing counterfeits of Plaintiffs' Marks, and the Court now assesses whether the balance of equities tip in favor of injunctive relief. Plaintiffs' hardships in the absence of injunctive relief would include loss of reputation, misappropriation and dilution of their marks should CDU's illegal conduct continue. The hardship on CDU includes costs of compliance with this Court's Order, namely refraining from its counterfeiting and infringing activities as well as recalling products it has sold under Plaintiffs' Marks. Given the potential harms Plaintiffs would suffer, the fact that the costs burdening Defendant CDU are only those of compliance with the law, and the public interest benefits of preventing consumer confusion in their purchases of counterfeit items, this Court finds that the balance of equities

tips in favor of granting injunctive relief to Plaintiffs.

17. CDU, and each of its officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors, assigns, designees, and any entity created, owned or controlled in whole or in part by CDU now or in the future, are each hereby permanently enjoined and forever restrained from:

(a) Using any of Plaintiffs' Marks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' Marks, in or as part of any mark, design or logo or otherwise on or in connection with any goods or on or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination or distribution of any goods;

(b) Using any of Plaintiffs' Marks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' Marks in or as part of any logo, business name, trade name, website identifier, website address, domain name, e-mail address or in any other means of identification;

©) Processing, packaging, importing or transporting any product that is not a genuine product of Plaintiffs bearing any of Plaintiffs' Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of Plaintiffs' Marks;

(d) Using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that CDU is associated with Plaintiffs or that any product imported, manufactured, distributed, or sold by CDU is in any manner associated or connected with Plaintiffs, or is authorized, licensed, sponsored or otherwise approved by Plaintiffs;

(e) Transferring, consigning, selling, shipping or otherwise moving any

goods, packaging or other materials in CDU's possession, custody or control bearing a design or mark substantially identical to Plaintiffs' Marks;

(f) Purchasing any of Plaintiffs' Marks in connection with any sponsored advertising on the Internet or using any of Plaintiffs' Marks in any source code or metatags or otherwise using Plaintiffs' Marks or trade names such that a search for Plaintiffs on the Internet will cause any domain name, website or advertisement for CDU to appear in search results;

(g) Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of any of Plaintiffs' Marks;

(h) Engaging in any activity that dilutes or tarnishes, or is likely to dilute or likely to tarnish, any of Plaintiffs' Marks; and

(I) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (h) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiffs' Marks, including but not limited to building or creating websites for others, hosting websites for others, or providing technical or other support for any e-commerce transactions that concern or relate to the sale of counterfeit or infringing goods.

18. CDU is hereby **ORDERED**, at its own expense, to recall any and all products that bear any copies or counterfeits of any of Plaintiffs' Marks, or that were sold under any of Plaintiffs' Marks, from any distributors, retailers, vendors or others to whom CDU has distributed or sold such products. CDU must undertake to issue such recall notices and take any other actions necessary to effectuate such recall within five (5) days after service of this Default Judgment and Order, and copies of all recall notices shall be sent to Plaintiffs' counsel on the same date they are

issued. Defendants shall bear all costs of the recall, including but not limited to returning any payments to the wholesalers and retailers.

19. CDU is hereby **ORDERED** to deliver up to Plaintiffs' counsel for destruction or other disposition all goods, molds, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (collectively, "Infringing Materials") (a) currently in CDU's possession or under CDU's control or (b) recalled by CDU pursuant to this Default Judgment and Order or otherwise, incorporating, featuring or bearing any of Plaintiffs' Marks, trade names or domain names or that include any simulation, reproduction, copy or colorable imitation of any of Plaintiffs' Marks, trade names or domain names, and all plates, molds, matrices and other means of making the same. Infringing Materials currently in CDU's possession or under CDU's control must be delivered up to Plaintiffs' counsel within five (5) days after service of this Default Judgment and Order; Infringing Materials recalled by CDU must be delivered up to Plaintiffs' counsel within five (5) days of CDU's receipt of such items. Plaintiffs are permitted to destroy all such goods or take any other action with respect to such goods without compensation to CDU or to any of the other defendants in action.

20. CDU is hereby **ORDERED** to provide Plaintiffs' counsel with the names, addresses and all other contact information in its possession or control (*e.g.*, telephone numbers, fax numbers) for the source of all products that have been, or are, in CDU's possession, custody or control, that bear or include, or were sold under, counterfeits or copies of any of Plaintiffs' Marks or trade names or domain names, or that otherwise are intended to copy Plaintiffs' products, including all manufacturers, distributors and/or suppliers.

21. CDU is hereby **ORDERED** to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of this Default Judgment and Order a report in writing under oath, setting forth in detail the manner and form in which it has complied with Paragraphs 17-20 above.

9

22. Plaintiffs have elected to recover statutory damages under 15 U.S.C. § 1117©). (Mem. in Support of Mot. For Default J. at 29-30). Under 15 U.S.C. § 1117(c)(1), a plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit trademark per type of goods or services sold, offered for sale or distributed, as the court considers just." For willful use of a counterfeit mark, the Lanham Act allows for maximum increases to $2,000,000 per mark, per type of good. 15 U.S.C. § 1117(c)(2). The claimant "generally has the burden of proving by credible evidence to a reasonable certainty his damage, and the amount thereof must be established at least to a reasonable certainty." Banjo Buddies, Inc. v. Renosky, 399 F.3d 168 (3d Cir. 2005). The Court may be guided by past statutory damages awards to evaluate whether a Plaintiffs' request is appropriate. Coach, Inc., 2011 U.S. Dist. LEXIS 32924, at * 19.

23. Based on Defendant CDU's alleged willful use of Plaintiffs' Marks, Plaintiffs' request statutory damages in the amount of $37,412,700 against CDU. This amount includes $479,650 in payments made from CDU to the Daniel Markus Defendants as shown in JPMorgan bank records subpoenaed by Plaintiffs, multiplied by the 26 good and mark combinations seized or purchased by Plaintiffs' agents from the Daniel Markus Defendants, totaling $12,470,900. This constitutes the "baseline amount of damages." See Chanel, 2009 WL 1653137, at *5. Since CDU's counterfeiting was willful, this baseline amount is trebled to equal $37,412,700 in total statutory damages.

24. Pursuant to 15 U.S.C. § 1117©), Plaintiffs are hereby awarded $37,412,700 in statutory damages against CDU for CDU's willful use of counterfeit marks. Defendants are hereby ordered to pay such amount within five (5) days of entry of this judgment.

25. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorneys' fees and costs, including but not limited to investigation charges, against CDU. While a prevailing party may only be entitled to attorneys' fees and costs "in exceptional cases" under § 43(a) of the Lanham Act, 15 U.S.C. §

1117(a), exceptional cases include those where the court has found willful infringement. See SecuraComm Consulting, Inc. V. Securacom Inc., 224 F.3d 273, 280 (3rd Cri. 2000); Coach v. Cosmetic House, 2011 U.S. Dist. LEXIS 32924 (D.N.J. May 17, 2011). Plaintiffs shall submit to the Court records evidencing reasonable attorneys' fees and costs, and an explanation thereof on or before September 20, 2011.

26. Pursuant to 15 U.S.C. § 1117(b), Plaintiffs are entitled to prejudgment interest on the amount of amount of statutory damages, attorneys' fees and costs awarded, running from April 20, 2010 through the date judgment is entered, at the rate set forth in Section 6621(a)(2) of the Internal Revenue Code of 1986, 26 U.S.C. § 6621(a)(2). Plaintiffs shall submit to the Court a calculation of prejudgment interest along with Plaintiff's records concerning attorneys' fees and costs on or before September 20, 2011.

27. Pursuant to 28 U.S.C. § 1961, Plaintiffs are entitled to postjudgment interest on the amount of statutory damages, attorneys' fees and costs awarded, at a rate equal to the weekly average one-year constant maturity Treasury Yield for the calendar week preceding the date judgment is entered.

28. CDU's bank, asset, investment and similar accounts, including but not limited to those set forth in Exhibit 4 hereto, shall be frozen pending payment to Plaintiffs as required hereunder or as may be further ordered, and Plaintiffs may execute a judgment against any bank, asset, investment or similar accounts of CDU, and/or against any other assets of CDU, to obtain the amounts required to be paid to Plaintiffs hereunder or as further ordered. CDU is hereby ordered to submit to the Court, with a copy to Plaintiffs' counsel, within five (5) days after entry of this Default Judgment and Order, the names of any bank(s) and account number(s) associated with all other bank or asset accounts not listed in Exhibit 4.

29. This Default Judgment and Order constitutes a final judgment as to all of the claims that were asserted in this case by Plaintiffs against CDU, other than Plaintiffs' claims for attorneys' fees, costs, and prejudgment and postjudgment

       interest, which claims shall be adjudicated by the Court after Plaintiffs comply with Paragraphs 18 and 19 above. This Default Judgment and Order also constitutes a final judgment as to all claims that could have been asserted by means of permissive or compulsory counterclaims by CDU against Plaintiffs.

30. This Court shall retain jurisdiction over this matter and the parties to it to interpret and enforce the terms of the Default Judgment and Order, to adjudicate Plaintiffs' claims for attorneys' fees, costs, and prejudgment and postjudgment interest, and for purposes of making any other orders necessary to implement the terms of this Default Judgment and Order and to punish or award damages for violation thereof.

Accordingly, **IT IS** on this **1st day of September, 2011,**

**ORDERED** that Plaintiffs' motion for judgement on default against Defendant Concept Designs Unlimited is **GRANTED.**

    **SO ORDERED.**

                              /s/ Jose L. Linares
                              United States District Judge

# EXHIBIT 1

## CARTIER Marks

| Mark | Reg. No. | Reg. Date | Registered Goods |
|---|---|---|---|
| BALLON BLEU | 3476888 | July 29, 2008 | Goods in precious metals and coated therewith, namely, cuff-links, tie clips, rings being jewelry, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry |
| [C design mark] | 1535215* | April 18, 1989 | Bracelets, rings, earrings |
| CARTIER | 759202* | Oct. 29, 1963 | *Inter alia*, articles of jewelry for personal wear |
| *Cartier* | 0411975 | February 13, 1945 | Watches and clocks and wrist watches with wrist straps and bracelets attached for securing the same on the wrist of the wearer, and traveling clocks and watches with covers of leather, fabric and the like for protecting them while traveling |
| [signature mark] | 2703544 | April 8, 2003 | Chronometers and watches |
| La Doña | 3462423 | July 8, 2008 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes made of precious metals for watches and jewelry |

\* The CARTIER Marks designated by an asterisk are relevant to the calculation of statutory damages owed by CDU, as set forth herein.

13

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| LANIERES | 2566458 | May 7, 2002 | Ashtrays, boxes and cases for watches, jewelry and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts sold empty, and serving trays, all these made of precious metals or coated therewith; jewelry, precious gem stones; chronometers, clocks and watches |
| Love | 3637776 | June 16, 2009 | Goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry |
| MUST DE CARTIER | 1291984 | August 28, 1984 | Watches, clocks, jewelry lighters made in whole or in part of precious metal |
| PANTHERE DE CARTIER | 2351631* | May 23, 2000 | Jewelry |
| PASHA | 1483326 | April 5, 1988 | Watches |
| PASHA SEATIMER | 3318649* | October 23, 2007 | Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry |
| ROTONDE | 3496125 | September 2, 2008 | Horological and chronometric instruments; jewelry of precious metal and precious stones; precious stones; articles in precious metals and their alloys, namely, cuff-links, tie clips, and watch chains, all sold through high-end luxury retail outlets |
| SANTOS | 1344284 | June 25, 1985 | Watches |
| TANK | 1006321 | March 11, 1975 | Watches |
| TANK | 3996779 | October 18, 2005 | Jewelry, such as bracelets, brooches, charms, cuff-links, earrings, necklaces, rings |

14

| Mark | Reg. No. | Reg. Date | Registered Goods |
|---|---|---|---|
| TORTUE | 1948372 | January 16, 1996 | Watches |
| TRINITY | 1927987* | October 17, 1995 | Jewelry made of precious metal or coated therewith |
| TRINITY | 2243233 | May 4, 1999 | Watches |
| (bracelet design) | 1372423* | November 26, 1985 | Bracelets |
| (design) | 3162410* | October 24, 2006 | Jewelry, namely, bracelets, watches, rings, charms, earrings, dog tag-type pendants; cuff-links; belt buckles made of precious metal |
| (watch design) | 3282846 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |
| (watch design) | 3282738 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |

15

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
|  | 3282739 | August 21, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3211038 | February 20, 2007 | Horologic and chronometric instruments, namely, watches |
|  | 3211039 | February 20, 2007 | Horologic and chronometric instruments, namely, watches |

# EXHIBIT 2

### VAN CLEEF & ARPELS Marks

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| VAN CLEEF & ARPELS | 2936247* | March 29, 2005 | Items made of precious metal, namely, <u>inter alia</u>, rings, bracelets, earrings, necklaces, pendants, charms; jewelry |
| ALHAMBRA | 2751878* | August 19, 2003 | Precious metal and their alloys and products made thereof or coated therewith not included in other classes, namely, jewelry, horological and chronometric instruments, namely, watches and watch bracelets, necklaces, jewelry chains of precious metal, brooches, earrings, jewelry rings, pendants, ankle bracelets, cuff links, studs made of precious metal |
| ALHAMBRA | 3489019 | August 19, 2008 | Jewelry; clock and watch making, namely, watches, watch bracelets, chronometers, clocks, horological and chronometric instruments and cases therefore |
| VCA | 1584572* | February 27, 1990 | Jewelry |
| (VCA logo) | 2692672* | March 4, 2003 | Goods made of precious metals or coated therewith, namely button covers, hair ornaments, headbands, buckles, jewelry, precious stones, phonological and chronometrical instruments, namely, chronometers, chronographs for use as watches; necklaces; chains, clips, ear clips, stud earrings, rings and pendants, all being jewelry; watches, watch bracelets, clocks |

_____
 * The VAN CLEEF & ARPELS Marks designated by an asterisk are relevant to the calculation of statutory damages owed by CDU, as set forth herein.

# EXHIBIT 3

Types of Goods for Each of Plaintiffs' Marks

*Cartier Marks*

| *Mark / Registration Number* | *Type(s) of Goods* | *No. Of Types of Goods* |
|---|---|---|
| CARTIER / 759,202 | Ring, Earrings, Cuff Links, Bracelet, Necklace | 5 |
| Cartier Design Mark / 3,162,410 | Ring, Earrings | 2 |
| Cartier Design Mark / 1,372,423 | Bracelet | 1 |
| TRINITY / 1,927,987 | Ring | 1 |
| PASHA SEATIMER / 3,318,649 | Cuff Links | 1 |
| PANTHERE DE CARTIER / 2,351,631 | Ring | 1 |
| Design Mark / 1,535,215 | Bracelet | 1 |
| Total Types of Goods Per Cartier Marks: | | <u>12</u> |

*Van Cleef & Arpels Marks*

| *Mark / Registration Number* | *Type(s) of Goods* | *No. Of Types of Goods* |
|---|---|---|
| VAN CLEEF & ARPELS / 2,936,247 | Necklace, Bracelet, Earrings, Ring | 4 |
| VCA / 1,584,572 | Necklace, Bracelet, Earrings | 3 |
| VCA Design Mark / 2,692,672 | Ring, Earrings, Necklace, Bracelet | 4 |
| ALHAMBRA / 2,751,878 | Necklace, Bracelet, Earrings | 3 |
| Total Types of Good Per Van Cleef & Arpels Marks: | | <u>14</u> |

**Total Types of Goods Per Plaintiffs' Marks: 26**

# EXHIBIT 4

CDU's Bank, Asset, Investment and Similar Accounts

| *Account Number* | *Bank* | *Type of Account* |
|---|---|---|
| 0001553306 | HSBC | Commercial Loan |
| 151167840365 | JPMorgan Chase | Checking |
| 151167840366 | JPMorgan Chase | Savings |
| 456007731 | Sovereign Bank | Checking |
| 8881086158 | Sovereign Bank | Business Line of Credit |
| 9960083385 | Citibank | Checking |